# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

ALBERT WEATHERS,

                     Plaintiff,

     vs.                           9:12-CV-1301
                                   (NAM/ATB)

DAVID ROCK, *et al*,

                     Defendants.

ALBERT WEATHERS, Plaintiff *pro se*
CATHY Y. SHEEHAN, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

     This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c). In this civil rights complaint, plaintiff alleges that defendants have violated his First Amendment right to practice his religion and his rights under the Religious Land Use and Institutionalized Persons Act, ("RLUIPA"), 42 U.S.C. § 2000cc-1(a) by denying him two Seder meals during Passover on April 6, 2012 and April 7, 2012, in part because inmates confined to the Special Housing Unit ("SHU") were not allowed to "congregate." (Compl. ¶¶ 10-12, 27-32, 41) (Dkt. No. 1). The complaint also contains general references to other complaints about how Jewish meals are handled, how Jewish inmates are treated differently than other inmates, how Jewish inmates are denied their rights to "participate in the Sabbath," and how the Rabbis do not make rounds once per week as indicated in the SHU manual. (Compl. ¶¶ 50-57, 60). Plaintiff seeks declaratory and

monetary relief. (Compl. ¶¶ 69-73).

Presently before the court is the defendants' motion to dismiss this action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 23). Plaintiff has responded in opposition to the motion. (Dkt. No. 29). For the following reasons, this court finds that the defendants' motion should be granted in part and denied in part.

## DISCUSSION

### I.  Facts and Contentions

Plaintiff states that he is Jewish, and that on March 26, 2012, he wrote to defendants Superintendent Rock; Deputy Superintendent for Programs, D. Haug; Mr. Lira;[1] and Rabbi Friedmann, informing them that plaintiff wished to participate in the Seder during Passover. (Compl. ¶ 2). Plaintiff states that, because food served for Passover is specially ordered, inmates must inform the staff ahead of time so that the correct amount of food may be purchased. (*Id.*) Plaintiff alleges that although he never received a response to his letter, plaintiff assumed that the Seder meal would be provided in accordance with Department of Corrections and Community Supervision ("DOCCS") Directive # 4202, governing religious policies. (Compl. ¶¶ 3-6).

Plaintiff states that when Passover began on April 6, 2012 at sundown, plaintiff

---

[1] Although Mr. Lira is mentioned in this sentence as a "defendant," he was not listed in the caption of the complaint, there is no indication of his title, there is no other mention of his name in the complaint, and he was never served. The court does not consider him a defendant. The court does note, as will be discussed below, that Mr. Lira is a defendant in a case, filed by this plaintiff shortly after this action, discussing many of the same facts that plaintiff raises here. Thus, there is no prejudice to plaintiff if Mr. Lira does not appear as a defendant herein. *See Weathers v. Rock, et al.*, 9:13-CV-195 (FJS/DEP).

and other Jewish inmates who were confined in SHU, asked defendant Officers Patterson and Forbes about the Seder meal. (Compl. ¶¶ 10-11). These were the two officers who were in charge of serving dinner to the inmates that evening. Plaintiff had obtained the Seder menu from Albany, so he knew what should have been on the menu. Plaintiff claims that he showed the menu to defendants Patterson and Forbes, but that these defendants only made disparaging remarks to plaintiff. (Compl. ¶¶ 11, 13). Plaintiff spoke to defendant Debya about the situation, and defendant Debya told plaintiff to write to the mess hall "to correct the issue of Passover." (Compl. ¶ 20). Plaintiff sates that defendant Debya failed to address any of the problems that were faced by the Jewish inmates during Passover, and he failed to contact anyone else who could address those problems. (Compl. ¶ 25).

Plaintiff alleges that on April 7, 2011, defendant officers R. Demers and Mr. Kroeger were in charge of serving the evening meals, and the Jewish inmates began to complain to them about the lack of a Seder meal. (Compl. ¶ 27). Plaintiff states that when these two officers arrived at plaintiff's cell, he attempted to explain that he was supposed to get a Seder meal, but they told plaintiff it was not their fault that the appropriate items were not provided. (Compl. ¶¶ 28-29). They refused to call the mess hall to notify the sergeant. (Compl. ¶ 30). Plaintiff states that when defendant Sergeant Debya finally made his rounds, and plaintiff explained what had happened, defendant Debya told plaintiff "that despite what the Memo states, no inmates in 'SHU' are allowed to participate in the Seder because inmates [have] to congregate." (Compl. ¶ 32). Plaintiff then told defendant Debya the story behind the Seder meal

and how important this meal is in the Jewish religion. (Compl. ¶ 35). Plaintiff states that defendant Debya told plaintiff there was nothing he could do about it, because it was the Superintendent's determination, and plaintiff should file a grievance. (Compl. ¶ 36).

Plaintiff states that he filed a grievance that was denied by the Inmate Grievance Resolution Committee ("IGRC") on May 1, 2012, stating that "per D. Haug (FSA) SHU inmates are not allowed the Seder meals." (Compl. ¶ 38). Plaintiff alleges that appealed to the Superintendent. On May 15, 2012, the Superintendent's response stated that "the Passover Menu was followed to assure all inmates received all required items and portions," and that this meal was served to the general population inmates who requested it. (Compl. ¶ 39, 41). However, due to the fact that the "event" took place in the Chapel, the inmates who were in SHU status could not participate. Plaintiff claims that there is nothing in DOCCS policy stating that Jewish inmates cannot participate in the Seder because they are in SHU. (Compl. ¶¶ 41-42). Plaintiff states that most of Upstate is an SHU, and the only general population inmates are those who are in the "Cadre Program" and are responsible for cleaning the buildings and grounds keeping. (Compl. ¶ 48). Plaintiff claims that inmates confined to Fishkill Correctional Facility's SHU are allowed to get Seder meals so they may perform Seder ceremonies in their cells.[2] (Compl. ¶ 49).

Plaintiff then states that this denial of a Seder meal is "just another issue with . .

---

[2] Plaintiff states that Fishkill has a general population of 1500 inmates. (Compl. ¶ 49).

. Upstate . . . that directly affects the Jewish population."[3] (Compl. ¶ 51). Plaintiff claims that the DOCCS calendar has the incorrect dates for Jewish holidays, resulting in mistakes serving special meals, and the staff does not handle Kosher food properly. (Compl. ¶¶ 54-55). Plaintiff claims that Rabbis do not make rounds once a week as they should, and the Rabbis seldom write back to inmates when they write letters. (Compl. ¶ 57). Finally, plaintiff states that the grievances were "past the 30 day time limit that C.O.R.C. [Central Office Review Committee] is to completely render a decision. (Compl. ¶ 59).

The complaint contains seven numbered causes of action:

1.   Defendants violated the plaintiff's First Amendment right to practice his religion when they failed to provide him with his Seder meal to perform his ceremony at sundown on April 6 and 7, 2012. (Compl. ¶ 62).

2.   Defendants violated plaintiff's First Amendment rights when they failed to follow the DOCCS memorandum for Passover and instead engaged in their own "wrongful acts." (Compl. ¶ 63).

3.   Defendants violated plaintiff's First Amendment rights when they failed to correct the deprivations. (Compl. ¶ 64).

---

[3] One of plaintiff's other actions in the Northern District of New York, mentioned above in footnote 1, specifically raises the additional claims that are mentioned in passing in paragraph 51 of this complaint. *Weathers v. Rock*, 9:13-CV-195. In 13-CV-195, plaintiff states that the "[i]ssues began on April 6th & 7th, when all Jewish members was [sic] denied the Seder meal . . . ." (Dkt. No. 1 in 13-CV-195 at ¶ 27). Plaintiff then discusses the erroneous dates listed for Jewish holidays (¶¶ 27-40), the improper handling of kosher food (¶ 45), and the failure of Rabbis to make regular rounds of the facility (¶ 117). Plaintiff brings many additional claims that are related to the religious claim in this action, but that occurred on different dates. 13-CV-195 is in its initial stages, and defendants have not yet been served. The court also notes that plaintiff attached a great deal more material to his complaint in 13-CV-195, some of which is relevant to the claims in this action in addition to the claims which only appear in 13-CV-195. However, this court may not consider materials that are attached to a different complaint in deciding a motion to dismiss.

4.      Defendant Forbes violated plaintiff's 14th Amendment rights to be "free from discrimination" when she told plaintiff that he was not a "real Jew," but was just using religion to obtain "different" food. (Compl. ¶ 65).

5.      Defendants violated RLUIPA when they failed to make necessary accommodations so that plaintiff could engage in his religious practices. (Compl. ¶ 66).

6.      Defendants violated RLUIPA when they placed a substantial burden on the practice of plaintiff's religion. (Compl. ¶ 67).

7.      Defendants violated RLUIPA when they knowingly disregarded DOCCS policy and prevented Jewish inmates from participating in the Seder. (Compl. ¶ 68).

Defendants[4] argue that plaintiff does not state a claim for relief. (Dkt. No. 23-1). Defendants argue that plaintiff's First Amendment claim fails because the denial of two Seder meals fails to allege "more than an inconsequential burden on his religious beliefs." (Dkt. No. 23-1 at 5). Defendants also argue that, assuming the plaintiff succeeded in showing a burden on his sincerely held religious beliefs, defendants had "clearly legitimate penological purposes" in deciding to serve the Seder meals to the general population and to prohibit the SHU inmates from attending. (*Id.* at 6).

Defendants also argue that plaintiff has failed to state a RLUIPA claim "since

---

[4] Rabbi Friedmann was never served in this action. Plaintiff was notified on December 6, 2012 that the Summons was returned unexecuted as to defendant Friedmann. (Dkt. No. 19). In the notice sent to plaintiff, the Marshal indicated that if plaintiff wished to make a further attempt at serving defendant Friedmann, plaintiff would be required to notify the Marshal in writing and submit a new U.S. Marshal Form USM 285, Summons and Complaint for service. (*Id.*) Plaintiff was also told that the failure to complete service could result in dismissal of the complaint against that defendant. (*Id.*) It does not appear that any further attempt was made to serve defendant Friedmann. Defense counsel noted that, because Rabbi Friedmann was not served, the Attorney General's Office does not represent him. This motion to dismiss has been filed on behalf of the other eight defendants. Because the court is not recommending dismissal of the complaint, the court will not discuss the possibility of dismissal as against Rabbi Friedmann at this time.

plaintiff cannot make a prima facie showing that his First Amendment rights were violated." (*Id.* at 9). Defendants argue that plaintiff's Equal Protection claim fails because plaintiff has no evidence to show that defendants intentionally or purposefully discriminated against him on the basis of his faith when they refused to allow him to attend the congregate Seder meals. (*Id.*) Finally, defendants argue that the complaint should be dismissed against them because none of them were personally involved in the alleged violations, and they are all entitled to qualified immunity. (*Id.* at 10-13).

## II. <u>Motion to Dismiss</u>

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat *pro se* pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia Ortiz v. Doe*,

171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

In this case, plaintiff has attached a number of documents to his complaint that the court may consider as incorporated into the complaint. Plaintiff has also filed an additional document that he states is "needed" for the case. (Dkt. No. 34). This document consists of the CORC decision on the appeal of a grievance plaintiff filed on July 9, 2012, dealing with a different religious meal. (Dkt. No. 34-1). The CORC "Unanimously Accepted" the grievance "In Part." *Id.* With the above standard in mind, the court will turn to the individual claims remaining in plaintiff's action.

## III. Religion

### A. Legal Standards

#### 1. First Amendment

Inmates have the right under the First and Fourteenth Amendments to freely exercise a chosen religion. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). However this right is not limitless, and

may be subject to restrictions relating to legitimate penological concerns. *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). The analysis of a free exercise claim is governed by the framework set forth in *O'Lone v. Estate of Shabazz*, 482 U.S.342 (1987) and *Turner v. Safely*, 482 U.S. 78, 84 (1987). This framework is one of reasonableness and is less restrictive than ordinarily applied to the alleged infringements of fundamental constitutional rights. *Ford*, 352 F.3d at 588.

In *O'Lone*, the Supreme Court held that a regulation that burdens a protected right withstands a constitutional challenge if that regulation is reasonably related to legitimate penological interests. 482 U.S. at 349 (quoting *Turner*, 482 U.S. at 89). An individualized decision to deny an inmate the ability to engage in a religious exercise is analyzed under the same standard. *Salahuddin v. Goord*, 467 F.3d 263, 274 n.4 (2d Cir. 2006) (citations omitted). In *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988), the Second Circuit held that to assess a free exercise claim, the court must determine "(1) whether the practice asserted is religious in the person's scheme of beliefs and whether the belief is sincerely held; (2) whether the challenged practice of prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological interest."

The court must examine whether the challenged action has a legitimate, rational connection to the governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating that right; and the existence of alternative means of facilitating the exercise of that right that have only a *de minimis* adverse effect on the valid

penological interests. *See King v. Bennett*, No. 02-CV-349, 2007 WL 1017102, at *4 (W.D.N.Y. March 30, 2007) (citing *Salahuddin*, 467 F.3d at 274). Finally, once prison officials state a legitimate penological interest to justify their actions, the burden shifts to plaintiffs to show that the defendants' concerns are "irrational." *Ford*, 352 F.3d at 595.

### 2.    Religious Land Use and Institutionalized Persons Act

RLUIPA provides that

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Under RLUIPA, the plaintiff bears the burden of showing that his religious exercise has been burdened and that the burden is substantial. *Marria v. Broaddus*, 200 F. Supp. 2d 280, 297 (S.D.N.Y. 2002) (citing 42 U.S.C. § 2000cc-2(b)). The burden then shifts to the government to show that the burden furthers a compelling governmental interest ***and*** that it is the ***least restrictive*** means of achieving that interest. *Id.* The act defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

A "substantial burden" is one that places "substantial pressure on an adherent to

modify his behavior and to violate his beliefs." *Singh v. Goord*, 520 F. Supp. 2d 487, 498 (S.D.N.Y. 2007) (citing, *inter alia, Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)). Inconvenience alone is insufficient to establish a substantial burden. *Id.* (citing *Westchester Day School v. Village of Mamaroneck*, 379 F. Supp. 2d 550, 557 (S.D.N.Y. 2005)). Furthermore, the substantial evidence test presupposes that some inconveniences may be so minor that they do not amount to a violation. *See McEachin v. McGuinnis*, 357 F.3d 197, 203 n.6 (2d Cir. 2004) (discussing in a footnote the applicability of the "time-honored maxim '*de minimis non curat lex*'"). However, the court should not attempt to engage in resolving disputes as to whether a particular practice is "central" or "mandatory" to a particular religion in determining whether a burden was substantial. *See Ford v. McGinnis*, 352 F.3d 582, 593-94 (2d Cir. 2003) (discussing First Amendment protections).

### B.     Application

Defendants argue that the denial of one or two religious meals is "de minimis." However, in *Kole v. Lappin*, 551 F. Supp. 2d 149, 154 (D. Conn. 2008), the court stated that "the parties do not dispute that Passover is a highly important holiday in the Jewish faith and that maintaining special dietary restrictions during Passover is essential" to the plaintiff's exercise of her religious beliefs. The court stated that "such a belief is substantially burdened when a policy puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* In *Kole* the court found that defendants did not substantially burden the exercise of plaintiff's religious beliefs because, although the facility had reduced the number of kosher selections, the

change did not impinge on the plaintiff's ability to keep kosher for Passover. *Id.*

In this case, plaintiff makes it clear in the complaint that he believes that the Seder meals are critical to the practice of his religion during Passover. (Compl. ¶ 34-35). In *Ford v. McGinnis*, 352 F.3d 582, 593-94 (2d Cir. 2003), the Second Circuit distinguished between depriving an inmate of a small number of meals, commensurate with a prisoner's dietary restrictions, which would be considered "de minimis," and depriving the inmate of even one meal that is "sufficiently unique in its importance," which could be the basis of a substantial burden on the inmates' religious rights. Thus, defendants' general argument that the denial of one or two religious meals is de minimis does not apply in this case, at least in the context of a motion to dismiss, since plaintiff has alleged, and the defendants do not dispute, that the Passover Seder meals are very important in the Jewish religion.

In *Ford*, the court held that even the denial of one Eid ul Fitr feast could constitute a substantial burden on the plaintiff's religion for both First Amendment and RLUIPA purposes. In addition, the court in *Ford* was considering the issues in the context of a summary judgment motion, not in the context of a motion to dismiss, in which the court must assume the truth of the facts stated in the complaint. In *Ford*, the court stated that the relevant question in determining whether the plaintiff's religious beliefs were substantially burdened was whether participation in the Eid ul Fitr feast was considered central or important to the plaintiff's practice of his religion, and that the defendants were "not entitled to judgment as a matter of law on that question." Defendants in this case would not be entitled to a finding on this issue

12

based solely upon a motion to dismiss.

Assuming that the denial of the two Seder meals was a substantial burden on plaintiff's religious beliefs, the court next considers under the First Amendment analysis, whether there was a legitimate penological reason for denying plaintiff his Seder meals. Defendants argue that the plaintiff was not served his Seder meals because the Seder was served only to general population inmates who requested it, plaintiff was housed in SHU at Upstate, the "event" took place in the Chapel, and the inmates confined in SHU could not attend. Defendants apparently believe that in order to properly celebrate the Seder, the inmate is required to attend a "congregate" meal, and because plaintiff was in SHU, defendants were justified in refusing to provide plaintiff's an appropriate meal.[5]

The Second Circuit has held that prisoners have a constitutional right to participate in congregate services, and it is error to assume that the prison officials are justified in limiting an inmate's free exercise rights just because the inmate was in disciplinary confinement. *Salahuddin v. Coughlin*, 993 F.2d 306, 308-10 (2d Cir. 1993); *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989). However, the "disciplinary confinement" in *Salahuddin* was keeplock confinement, which is

---

[5] The court notes that there is some reference to the fact that plaintiff might not have requested the meals in time, but defendants did not make this a central argument, and plaintiff does not appear to have been refused the meal because his request was not timely. In any event, the issue of timeliness could not be determined on a motion to dismiss because there is no statement by any defendant of when the requests were required to be made. Plaintiff acknowledges that he was supposed to notify officials of his desire to participate in the Seder, but claims that he did so in the form of his initial letters.

confinement to one's own cell,[6] as opposed to confinement in an SHU, which is generally reserved for more serious misbehavior. *See* 993 F.2d at 308 ("confinement in keeplock does not deprive prisoners of [the right to participate in congregate services]").

In fact, DOCCS Directive # 4202(J)(1), cited by plaintiff, refers to attendance at congregate religious services by inmates in "keeplock status or confined to his or her cell or room." The directive states that such inmates may request permission to attend regularly scheduled congregate religious services, and that the final decision to permit attendance rests with the Superintendent. *Id.* # 4202(J)(1)-(2). Inmates confined to SHU are not mentioned in this section. However, DOCCS Directive 4933, § 304.10 (d) specifically provides that attendance at congregate religious services will not be permitted for inmates confined in SHU. Plaintiff has misinterpreted the directive.

In *Smith v. Artus*, No. 9:07-CV-1150, 2010 WL 3910086, at *20-21 (N.D.N.Y. Sept. 30, 2010), *rev'd in part on other grounds*, No. 11-4186-pr, 2013 WL 1338359 (2d Cir. 2013), the district court found in the context of a summary judgment motion, that DOCCS Directive No. 4933 served a legitimate penological interest specifically as it related to the policy at Upstate, and was the least restrictive means of serving that interest for purposes of a First Amendment free exercise analysis. *Id.* at *23. In making this determination, the district court in *Smith* undertook a detailed analysis of the substantial burden that taking inmates from SHU to congregate services would place on the facility and discussed the security risks that would have to be addressed

---

[6] *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989).

in order to do so. *Id.*

With respect to RLUIPA, the district court held that notwithstanding the substantial burden on plaintiff's exercise of his religion, the policy prohibiting SHU inmates from attending congregate services serves a compelling governmental interest and is the least restrictive means of addressing that interest. *Id.* at *24. Therefore, the court dismissed both the First Amendment and RLUIPA claims regarding the ability of SHU inmates to attend congregate services.[7] Thus, to the extent that plaintiff alleges that he should have been allowed to attend the Seder meal in the Chapel with the other Jewish inmates, his claim may be dismissed under both the First Amendment and RLUIPA.

This argument does not address the entire issue presented by plaintiff. Plaintiff did not initially request to attend congregate "services",[8] nor did he state that he specifically requested permission to attend the Seder with other inmates. Plaintiff's

---

[7] Although the Second Circuit reversed portions of *Smith*, the court specifically stated that "[t]he portions of the District court decision addressing [the inmate's ability to attend congregate religious services while incarcerated in SHU] remain undisturbed by this order. 2103 WL 1338359, at *1 n.1. *See also Griffin v. Coughlin*, 743 F. Supp. 1006, 1025 (N.D.N.Y. 1990) (citing cases in which the court upheld the denial of congregate services to those inmates in SHU or administrative segregation pursuant to the Free Exercise clause).

[8] Plaintiff does cite DOCCS Directive # 4202 in his complaint, claiming that this directive applies to inmates that are confined in general, and that confined inmates may ask permission to attend services. (Compl. ¶ 6). Plaintiff claims that he should have been "notified" pursuant to the Directive, that he had the opportunity to ask permission to attend services. (*Id.* ¶¶ 43-46). Plaintiff's argument in that regard is misplaced as stated above because the directive applies only to keeplock confinement and not to inmates in SHU as is made clear by Directive # 4933. However, when plaintiff describes the denial of the Seder meal, he does not refer to congregate services, and his causes of action merely allege the denial of the meal, not the denial of the right to attend the dinner with other inmates. The court would also point out that the Seder meals were not really "congregate services," although the inmates would still have to be removed from SHU in order to attend the event.

complaint is that he did not receive the proper Seder meals, after notifying defendants that he wished to be included on the list of inmates receiving the special meals. Defendants are arguing that in order to get his Seder meals, plaintiff would have to go to where the meal was being served,[9] and he could not do this because he was in SHU, thus, the denial of the meal itself was also proper.

Plaintiff's main claim seems to be the denial of the meal itself, not the denial of the ability to attend the meal with other inmates. In his response to the motion to dismiss, although plaintiff argues that he should have been entitled to go to the Seder pursuant to Directive 4202, he also states that participating in the Seder would have been possible in his cell, regardless of the defendants' belief that the he would have had to attend a "congregate" service in order to obtain the proper meals. (Dkt. No. 29 at 3, 6) ("Contrary to the Defendants [sic] belief that the "Seder" is a Congregate Service, its [sic] not. Seder can be exercised singularly or with others.").

Defendants also argue that another legitimate penological purpose exists for failing to serve plaintiff the religious meal in his cell. (Def.s' Br. at 7). Defendants state that "serving more than a thousand SHU inmates individually with either a Seder meal or regular meal would be logistically prohibitive and would impede the operation and maintenance of the prison." *Id.* This argument, while possibly meritorious, requires more factual analysis than is possible on a motion to dismiss. In the

---

[9] Defendants' view is that attending the meal would be akin to attending a "congregate service," and this is specifically forbidden to SHU inmates.

complaint, plaintiff does not mention the number of SHU inmates,[10] how many of those inmates might be Jewish or, if there are other Jewish inmates in SHU, how many have requested special meals. Thus, to find that serving plaintiff's meal in his cell would have been "logistically prohibitive" would be another factual determination that this court cannot resolve on a motion to dismiss.

Plaintiff asserts that inmates incarcerated in Fishkill Correctional Facility's SHU are allowed to obtain Seder meals, so that they may perform Seder ceremonies in their cells. Defendants respond that Fishkill is a medium security facility, where inmates may move about as they please, while Upstate is a maximum security SHU facility where there are no congregate activities, prisoners are confined to their cells 23 hours per day, and visits and reading materials are severely restricted. (Def.'s Br. at 7). This argument does not address the relevant issue. There is no indication of what may be required for the Seder ceremony, other than the appropriate food, and plaintiff does not ask for anything else. Further, if the Upstate inmates cannot be out of their cells, they must have their meals brought to them individually in any event.

While the court may be able to resolve this issue after some discovery, including affidavits from relevant individuals, the court cannot make the assumptions that defendants request without the additional information. Thus, the court will not recommend dismissal of either the First Amendment or RLUIPA claims with respect

---

[10] Plaintiff does mention that defendant Forbes told plaintiff that "if she had to served [sic] the Seder meals to all Passover participants, she would be here all night." (Compl. ¶ 12). This random comment does not establish how many individuals would need to have Seder meals provided to them or whether there would be an actual burden on the organization of the facility. A motion to dismiss is simply not the vehicle for making this determination.

to the issue of whether plaintiff should have been allowed to obtain the Seder meals in his cell.[11]

## IV.  Personal Involvement

### A.  Legal Standards

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  A supervisory official is personally involved if that official directly participated in the infraction. *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986).  The defendant may have been personally involved if he or she failed to remedy the wrong after learning about it through a report or appeal; if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue, or if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.  See also*

---

[11] Defendants argue that since plaintiff cannot make a prima facie showing that his First Amendment rights were violated, the Court need not go further to analyze RLUIPA.  This court does not agree.  Once plaintiff has shown that the right to practice his religion has been substantially burdened, the First Amendment only requires that the restriction be reasonably related to a legitimate penological interest, while RLUIPA requires that the burden placed on plaintiff further a *compelling governmental interest* and that it is the *least restrictive means of achieving that interest*. *Marria v. Broaddus*, 200 F. Supp. 2d at 297.  Comparing these standards indicates that the court could find a RLUIPA violation without finding that the First Amendment was violated.  Thus, defendants argument is misplaced unless the court were to find that the right to practice plaintiff's religion was not substantially burdened, a finding that this court will not make on the record of this motion to dismiss.  The court is aware that no damages can be assessed under RLUIPA, but plaintiff is also asking for declaratory relief. *See Loccenitt v. City of New York*, No. 12 Civ. 948, 2013 WL 1091313, at *6 (S.D.N.Y. March 15, 2013) (citing *Pugh v. Goord*, 571 F. Supp. 2d 477, 506-507 (S.D.N.Y. 2008) (citing cases)) (no damages available under RLUIPA).

*Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, 556 U.S. 662 (2009).[12]

The failure of a supervisory official to investigate a letter of protest written by an inmate is insufficient to establish personal involvement. *Smart v. Goord*, 441 F. Supp. 2d 631, 642–643 (S.D.N.Y. 2006). Mere notice of alleged wrongdoing is insufficient to establish a supervisor's or administrator'[s] personal involvement. *Gibson v. Comm'r of Mental Health*, No. 04 Civ. 4350, 2008 WL 4276208, at *8, 2008 U.S. Dist. LEXIS 70080, at *27 (S.D.N.Y. Sept. 17, 2008). While mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . '[p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint.'" *Boddie v. Morgenthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (quoting *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002)).

## B.    Application

Defendants argue that plaintiff has failed to state the requisite personal

---

[12] The court notes that the viability of the *Colon* predicates for supervisory liability has been questioned after the Supreme Court's decision in *Ashcroft v. Iqbal*, the Second Circuit has not specifically ruled on the issue, and some district courts have determined that *Iqbal* has nullified some of these factors, while others assume that these factors are still good law until the Second Circuit resolves any conflicts. *See D'Attore v. New York City Dep't of Correction*, No. 10 Civ. 815, 2012 WL 4493977, at *7 (S.D.N.Y. Sept. 27, 2012) (RR discussing cases and finding that *Colon* still applies in cases that do not require a showing of discriminatory intent), *adopted*, 2012 WL 5951317 (S.D.N.Y. Nov. 28, 2012); *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (*Iqbal* did not change the *Colon* factors); *Sash v. United States*, 647 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (*Iqbal* may have invalidated all but two of the *Colon* factors). In any event, the issue in this case is not whether the superior was involved or knew about the alleged violations, but whether the defendants who were actually involved in the conduct were responsible for the service of the religious meal. Thus, the court need not decide whether *Colon* survives *Iqbal.*

involvement by the following defendants: Debya, Demers, Forbes, Haug, Kroeger, Patterson and Uhler. This court finds that, while plaintiff states that he was told that the alleged restriction was the "superintendent's policy," plaintiff alleges that he dealt personally with defendants Debya, Forbes, Patterson, Demers, and Kroeger.

Defendants Forbes, Patterson, Demers, and Kroeger were serving the meals to SHU inmates on April 6 and 7, 2012. Defendant Forbes is the individual who made the comment about her "inability" to serve individual meals to everyone. (Compl. ¶ 12). She also allegedly made a discriminatory comment to plaintiff about his not being a "real Jew," and that he was only practicing Judaism so that he could get special food.[13] (Compl. ¶13). While the individuals who served plaintiff's meals might not be responsible for the policy, plaintiff alleges that they refused to contact anyone who might be able to help him.[14]

Defendant Debya was the Sergeant to whom plaintiff spoke after the meals were served, and who told plaintiff that he could not help because the policy being challenged was the Superintendent's responsibility, but that plaintiff should write a grievance about the issue. (Compl. ¶¶ 18-25, 31-36). Plaintiff states that defendant Debya "failed to address my problems" even after plaintiff explained that the Seder

---

[13] While this statement may ultimately fail to survive the motion to dismiss as discussed below, it is not for lack of personal involvement.

[14] Plaintiff claims that on April 6th, he asked defendant Forbes to see the Sergeant, and that she refused, but told plaintiff that the Sergeant would be making his rounds later. While this refusal to act may ultimately fail to rise to the level of a violation, defendant Forbes did speak with plaintiff personally, and the court will not recommend dismissal of this action against defendant Forbes based upon lack of personal involvement.

only lasted two days, and he did not have time to write a grievance. (Compl. ¶ 21).

Defendant Haug was the individual who was responsible for denying plaintiff's grievance. (Compl. ¶ 38). Plaintiff states that the response to his grievance from the Inmate Grievance Resolution Committee stated that "per D. Haug (FSA) SHU inmates are not allowed the Seder meals." (Compl. ¶ 38). The details of this statement are unclear. (Dkt. No. 1-1, Exhibits to Compl. at CM/ECF p.16). However, this is enough to establish personal involvement for purposes of a motion to dismiss.

The only defendant who does not appear to be mentioned in plaintiff's complaint as having any involvement whatsoever in these allegations is defendant Uhler. Defendant Uhler is listed as the Deputy Superintendent of Security, but is mentioned only in the caption and in the list of defendants. Thus, the court will recommend that the motion to dismiss be granted as to defendant Uhler based on lack of personal involvement.

## V.  Equal Protection

### A.    Legal Standard

The Equal Protection Clause of the Fourteenth Amendment provides that the government shall treat all similarly-situated people alike. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citing *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Generally, the equal protection clause has been "concerned with governmental 'classifications that affect some groups of citizens differently than others.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). To establish an equal protection violation, the plaintiff must show that the defendants applied a

different standard to similarly situated individuals. *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 111 (2d Cir. 2006). Plaintiffs must first show that they were treated differently than others similarly situated because of intentional or purposeful discrimination. *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Then, plaintiffs must show that the difference in treatment cannot survive the appropriate level of scrutiny. *Id.*

## B. Application

One of plaintiff's causes of action states that defendant Forbes violated plaintiff's right to be free from "discrimination when she told plaintiff he was not a "real Jew," and plaintiff cites the Fourteenth Amendment. It is unclear whether he is attempting to allege any form of Equal Protection violation. To the extent that plaintiff's complaint can be interpreted as making an Equal Protection claim, the claim may be dismissed. He has not alleged that inmates of other religions who were incarcerated in SHU were allowed to attend congregate services or meals. He also has failed to allege that inmates of any other religion were allowed to be served religious meals in their cells.

To the extent that plaintiff claims that defendant Forbes violated plaintiff's Fourteenth Amendment rights by telling him he was not a "real Jew" and telling him that he was only practicing Judaism to get the special food, plaintiff does not state a claim. Verbal harassment and profanity, no matter how unprofessional and offensive does not rise to the level of a constitutional violation. *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998); *see also Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir.

1986) (a guard calling a plaintiff names did not establish any "appreciable injury" and dismissal of the claim was proper). Thus, even assuming that defendant Forbes made the statement attributed to her, the claim may be dismissed.

## VI.  **Qualified Immunity**

### A.  **Legal Standards**

The doctrine of qualified immunity shields government officials from liability for civil damages when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is well-established that restrictions on the exercise of a constitutional right must be reasonably related to a legitimate penological interest for purposes of the First Amendment, and under RLUIPA, the restriction must support a compelling state interest, and must be the least restrictive means for doing so. Because this is a motion to dismiss, and as stated above, the court cannot make a determination of whether the plaintiff's constitutional rights were violated without a factual determination of the reasonableness of the restriction, the court will not recommend granting dismissal on qualified immunity grounds.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 23) be **GRANTED IN PART**, and the complaint dismissed

(1) without prejudice as to defendant **UHLER** based on a lack of personal involvement,

(2) with prejudice as to the plaintiff's Fourth Cause of Action against defendant **FORBES**,

(3)     without prejudice as against **ALL DEFENDANTS** as to plaintiff's claim that he was entitled to attend the Seder meal with other inmates,

and it is further

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 23) be

**DENIED IN ALL OTHER RESPECTS.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: April 23, 2013

Hon. Andrew T. Baxter
U.S. Magistrate Judge