---

ALBERT WEATHERS,

                     Plaintiff,

     vs.                                9:12-CV-1301
                                              (NAM/ATB)

DAVID ROCK, et al.,

                     Defendants.

---

ALBERT WEATHERS, Plaintiff pro se
CATHY Y. SHEEHAN, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

### REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c). In this civil rights complaint, plaintiff alleges that defendants have violated his First Amendment right to practice his religion and his rights under the Religious Land Use and Institutionalized Persons Act, ("RLUIPA"), 42 U.S.C. § 2000cc-1(a) by denying him two Seder meals during Passover on April 6, 2012 and April 7, 2012, in part, because inmates confined to the Special Housing Unit ("SHU") were not allowed to "congregate." (Compl. ¶¶ 10-12, 27-32, 41) (Dkt. No. 1). In his complaint, plaintiff sought declaratory and monetary relief. (Compl. ¶¶ 69-73). However, at his deposition, plaintiff asserted that he seeks only monetary relief. (Deposition Transcript ("DT") at 44) (Dkt. No. 64-6).

On December 10, 2012, defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), to which plaintiff responded in opposition. (Dkt. Nos. 23, 29, 34). On

May 16, 2013, District Judge Norman A. Mordue approved my April 23, 2013 report, recommending that the defendants' motion be granted in part, and denied in part. (Dkt. No. 35, 37). Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 with respect to the remaining issues. (Dkt. No. 64). Plaintiff has responded in opposition to the motion, and defendants have filed a reply. (Dkt. Nos. 75, 77). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

## DISCUSSION

### I.    Facts and Contentions

For clarity, I will briefly repeat the facts as alleged by plaintiff. Plaintiff states that he is Jewish, and that on March 26, 2012, he wrote to defendants Superintendent Rock; Food Service Administrator, D. Haug; Mr. Lira;[1] and Rabbi Friedmann, informing them that plaintiff wished to participate in the Seder during Passover. (Compl. ¶ 2). Plaintiff states that, because food served for Passover is specially ordered, inmates must inform the staff ahead of time so that the correct amount of food may be purchased. (*Id.*) Plaintiff alleges that although he never received a response to his letters, plaintiff assumed that the Seder meal would be provided in accordance with Department of Corrections and Community Supervision ("DOCCS") Directive # 4202, governing religious policies. (Compl. ¶¶ 3-6).

---

[1] As stated in my previous Report, Mr. Lira is not a defendant in this action. (Dkt. No. 35 at 2 n.1. Mr. Lira is a defendant in another case, filed by this plaintiff shortly after this action, discussing some of the same facts that plaintiff raises here and raising claims regarding subsequent denials of appropriate meals for the Jewish inmates. *See Weathers v. Rock, et al.*, 9:13-CV-195 (FJS/DEP). *Weathers v. Rock* is currently pending, and no dispositive motions have been filed.

Plaintiff states that when Passover began on April 6, 2012 at sundown, plaintiff and other[2] Jewish inmates who were confined in SHU, asked defendant Officers Patterson and Forbes about the Seder meal.[3] (Compl. ¶¶ 10-11). These were the two officers who were in charge of serving dinner to the inmates that evening. Plaintiff had obtained the Seder menu from Albany, so he knew what should have been on the menu. Plaintiff claims that he showed the menu to defendants Patterson and Forbes, but that these defendants only made disparaging remarks to plaintiff. (Compl. ¶¶ 11, 13). Plaintiff spoke to defendant Sergeant Debya about the situation, and defendant Debya told plaintiff to write to the mess hall "to correct the issue of Passover." (Compl. ¶ 20). Plaintiff sates that defendant Debya failed to address any of the problems that were faced by the Jewish inmates during Passover, and he failed to contact anyone else who could address those problems. (Compl. ¶ 25).

Plaintiff alleges that on April 7, 2012, defendant officers R. Demers and Mr. Kroeger were in charge of serving the evening meals, and the Jewish inmates again began to complain to them about the lack of a Seder meal. (Compl. ¶ 27). Plaintiff states that when these two officers arrived at plaintiff's cell, he attempted to explain that he was supposed to get a Seder meal, but they told plaintiff it was not their fault that the appropriate items were not provided. (Compl. ¶¶ 28-29). They refused to call the mess hall to notify the sergeant. (Compl. ¶ 30). Plaintiff states that when defendant

---

[2] Although plaintiff references "other" Jewish inmates, this case is only about plaintiff's own issues. There are no other plaintiff's in this action.

[3] Plaintiff did receive a Passover meal. He did not receive the additional items required for the Seder. The court will use plaintiff's terminology and will refer to the "Seder meal."

Sergeant Debya finally made his rounds on April 7th, and plaintiff explained what had happened, defendant Debya told plaintiff "that despite what the Memo states, no inmates in 'SHU' are allowed to participate in the Seder because inmates [have] to congregate." (Compl. ¶ 32). Plaintiff then told defendant Debya the story behind the Seder meal and how important this meal is in the Jewish religion. (Compl. ¶ 35). Plaintiff states that defendant Debya told plaintiff there was nothing he could do about it, because it was the Superintendent's determination, and plaintiff should file a grievance. (Compl. ¶ 36).

Plaintiff states that he filed a grievance that was denied by the Inmate Grievance Resolution Committee ("IGRC") on May 1, 2012, stating that "per D. Haug (FSA) SHU inmates are not allowed the Seder meals." (Compl. ¶ 38). Plaintiff appealed to the Superintendent. On May 15, 2012, the Superintendent's response stated that "the Passover Menu was followed to assure all inmates received all required items and portions," and that this meal was served to the general population inmates who requested it. (Compl. ¶ 39, 41). However, due to the fact that the "event" took place in the Chapel, the inmates who were in SHU status could not participate.

Plaintiff claims that there is nothing in DOCCS policy stating that Jewish inmates cannot participate in the Seder because they are in SHU. (Compl. ¶¶ 41-42). Plaintiff states that most of the Upstate population is in SHU. The only "general population" inmates are those who are in the "Cadre Program" and are responsible for cleaning the buildings and grounds keeping. (Compl. ¶ 48). Plaintiff argues that inmates confined to Fishkill Correctional Facility's SHU are allowed to get Seder meals

so they may perform Seder ceremonies in their cells.[4] (Compl. ¶ 49).

Plaintiff then states that this denial of a Seder meal is "just another issue with . . . Upstate . . . that directly affects the Jewish population."[5] (Compl. ¶ 51). Plaintiff claims that the DOCCS calendar has the incorrect dates for Jewish holidays, resulting in mistakes serving special meals, and the staff does not handle Kosher food properly. (Compl. ¶¶ 54-55). Plaintiff claims that Rabbis do not make rounds once a week as they should, and the Rabbis seldom write back to inmates when they write letters. (Compl. ¶ 57). Finally, plaintiff states that the grievances were "past the 30 day time limit that C.O.R.C. [Central Office Review Committee] is to completely render a decision." (Compl. ¶ 59).

Defendants' motion to dismiss for failure to state a claim made some of the same arguments that the defendants make herein. I recommended granting the motion as to some issues and some defendants.[6] (Dkt. No. 35). The difference is that the defendants

---

[4] Plaintiff states that Fishkill has a general population of 1500 inmates. (Compl. ¶ 49).

[5] In *Weathers v. Rock*, mentioned above in footnote 1, plaintiff specifically raises the additional claims that are mentioned in passing in paragraph 51 of this complaint. *Weathers v. Rock*, 9:13-CV-195. In 13-CV-195, plaintiff states that the "[i]ssues began on April 6th & 7th, when all Jewish members was [sic] denied the Seder meal . . . ." (Dkt. No. 1 in 13-CV-195 at ¶ 27). Plaintiff then discusses the erroneous dates listed for Jewish holidays (*Id.* ¶¶ 27-40), the improper handling of kosher food (¶ 45), and the failure of Rabbis to make regular rounds of the facility (*Id.* ¶ 117). Plaintiff states that mentioning the Seder issue in *Weathers v. Rock* was merely by way of "background" and was meant to clarify that there were multiple religious issues for Jewish inmates of DOCCS. (*Id.* ¶ 28).

[6] As the result of my recommendation and Senior Judge Mordue's order, plaintiff's claims (both First Amendment and RLUIPA) that he should have been allowed to attend the congregate services for the Seder were dismissed. The claims against defendants Uhler and Forbes were also dismissed. (Dkt. Nos. 35, 37). Defendant Forbes was dismissed because plaintiff's claim was only that she verbally harassed plaintiff about his religion. Plaintiff's equal protection claims were also dismissed. (Dkt. No. 35 at 22).

are now moving for summary judgment, and the court may consider material outside the complaint, including plaintiff's deposition that was taken on September 17, 2013, and which has been filed in support of the defendants' motion. (Dkt. No. 64-6). The remaining issues in this case are whether plaintiff's First Amendment rights and rights under RLUIPA were violated when he was not allowed to have the Seder meal in his cell on April 6 and 7, 2012, and if so, whether any of the defendants were personally involved or were entitled to qualified immunity. The remaining defendants are Superintendent Rock, CO Patterson, Sergeant Debya, CO Demers, Mr. Kroeger, and Rabbi Friedmann.

## II.  **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving

party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

## III.  Religion Claims

### A.  Legal Standards

#### 1.  First Amendment

Inmates have the right under the First and Fourteenth Amendments to freely exercise a chosen religion. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). However this right is not limitless, and may be subject to restrictions relating to legitimate penological concerns. *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). The analysis of a free exercise claim is governed by the framework set forth in *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) and *Turner v. Safely*, 482 U.S. 78, 84 (1987). This framework is one of reasonableness and is less restrictive than the standard ordinarily applied to the alleged infringements of fundamental constitutional rights. *Ford*, 352 F.3d at 588.

In *O'Lone*, the Supreme Court held that a regulation that burdens a protected right withstands a constitutional challenge if that regulation is reasonably related to

legitimate penological interests. 482 U.S. at 349 (quoting *Turner*, 482 U.S. at 89). An individualized decision to deny an inmate the ability to engage in a religious exercise is analyzed under the same standard. *Salahuddin v. Goord*, 467 F.3d 263, 274 n.4 (2d Cir. 2006) (citations omitted). In *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988), the Second Circuit held that to assess a free exercise claim, the court must determine "(1) whether the practice asserted is religious in the person's scheme of beliefs and whether the belief is sincerely held; (2) whether the challenged practice of prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological interest."

The Second Circuit has very recently examined the standard for analyzing a First Amendment religion claim. *Holland v. Goord*, No. 13-2694, 2014 WL 3360615, at *4-7 (2d Cir. July 10, 2014). In *Holland*, the court discussed the degree of burden required for a First Amendment claim. *Id.* The court noted that it has not been decided in this Circuit whether, to state a claim under the First Amendment, the inmate must show at the onset that the disputed conduct "substantially burdens his sincerely held religious beliefs." *Id.* (citing *Salahuddin, supra* at 274-75; *Ford, supra* at 592 (where the court assumed without deciding that the substantial burden test applies)). The court in *Holland* did not decide the issue, rather the court assumed the continued validity of the substantial burden test and analyzed the case accordingly.[7] *Id.* This court will follow the analysis in *Holland* and proceed to consider the First Amendment analysis,

---

[7] This finding was supported by the fact that the court's "precedent squarely dictat[ed] that Holland's religious exercise was unconstitutionally burdened," a point that the defendants in that case did not challenge on appeal. *Holland*, 2014 WL 3360615 at *4.

assuming that the substantial burden test is still valid.

Once a substantial burden is found, the court must examine whether the challenged action has a legitimate, rational connection to the governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating that right; and the existence of alternative means of facilitating the exercise of that right that have only a *de minimis* adverse effect on the valid penological interests. *See King v. Bennett*, No. 02-CV-349, 2007 WL 1017102, at *4 (W.D.N.Y. March 30, 2007) (citing *Salahuddin*, 467 F.3d at 274). Finally, once prison officials state a legitimate penological interest to justify their actions, the burden shifts to plaintiffs to show that the defendants' concerns are "irrational." *Ford*, 352 F.3d at 595.

### 2.    Religious Land Use and Institutionalized Persons Act

RLUIPA provides that

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Under RLUIPA, the plaintiff bears the burden of showing that his religious exercise has been burdened and that the burden is substantial.[8] *Marria*

---

[8] RLUIPA uses the term "substantial burden" in the language of the statute, removing any ambiguity with respect to the extent of the burden required to establish a statutory claim.

*v. Broaddus*, 200 F. Supp. 2d 280, 297 (S.D.N.Y. 2002) (citing 42 U.S.C. § 2000cc-2(b)). The burden then shifts to the government to show that the burden furthers a compelling governmental interest **and** that it is the **least restrictive** means of achieving that interest. *Id.* The act defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

A "substantial burden" is one that places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Singh v. Goord*, 520 F. Supp. 2d 487, 498 (S.D.N.Y. 2007) (citing, *inter alia, Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)). Inconvenience alone is insufficient to establish a substantial burden. *Id.* (citing *Westchester Day School v. Village of Mamaroneck*, 379 F. Supp. 2d 550, 557 (S.D.N.Y. 2005)). Furthermore, the substantial burden test presupposes that some inconveniences may be so minor that they do not amount to a violation. *See McEachin v. McGuinnis*, 357 F.3d 197, 203 n.6 (2d Cir. 2004) (discussing in a footnote the applicability of the "time-honored maxim '*de minimis non curat lex*'"). However, the court should not attempt to engage in resolving disputes as to whether a particular practice is "central" or "mandatory" to a particular religion in determining whether a burden was substantial. *See Ford v. McGinnis*, 352 F.3d 582, 593-94 (2d Cir. 2003) (discussing First Amendment protections).

### B. Application

#### 1. RLUIPA

Plaintiff has been released from incarceration, thus, injunctive relief is no longer

possible and any claim for injunctive relief would be dismissed as moot.  Additionally, at plaintiff's deposition, he specifically stated that he was seeking only monetary damages. (DT at 44-45).  However, only injunctive relief is available under RLUIPA, and money damages are not available against state defendants, either in their individual or official capacities. *Loccenitt v. City of New York*, No. 12 Civ. 948, 2013 WL 1091313, at *6 (S.D.N.Y. March 15, 2013) (citing *Pugh v. Goord*, 571 F. Supp. 2d 477, 506-507 (S.D.N.Y. 2008) (citing cases)).  Thus, plaintiff's RLUIPA claim may be dismissed.

### 2.    First Amendment

While plaintiff may no longer obtain injunctive relief (either under RLUIPA or the First Amendment), based upon his transfer out of Upstate and his release from prison, further analysis is required with respect to a First Amendment claim for damages.  Defendants do not dispute either that (1) they failed to provide plaintiff the food required to celebrate the Seder portion of his Passover meal on the first two days of Passover (April 6 and 7) of 2012 or (2) that the Seder has a great deal of religious significance.  Case law supports this finding. *See e.g. Riehl v. Martin*, No.  9:13-CV-439, 2014 WL 1289601 at *10 n.18 (N.D.N.Y. March 31, 2014) (Passover Seder has been recognized as being greatly significant to Jewish adherents) (citing *Whitney v. Brown*, 882 F.2d 1068, 1074 (6th Cir. 1989)).  Rather, they argue that none of the named defendants were personally involved in the policy which supported the denial of this portion of the meal, and that in any event, qualified immunity would prevent the assessment of damages.

### a.    Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated

that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)).  This court finds that even if the *Colon* factors are considered, and are all still viable, plaintiff has not alleged the requisite personal involvement of the named defendants so that any damages may be assessed against them.

Defendants state that plaintiff was not served his Seder meals because the Seder is only celebrated in a congregate service, by "call-out" only, and inmates who are housed in SHU may not participate in congregate services.[9]  Thus, those inmates may not participate in the Seder, which includes being provided with the appropriate food in their SHU cells.  Defendants argue that the policy is dictated by the Central Office, that none of the named defendants participated in making the policy, nor could they override or change the policy.

The court would first note that plaintiff is correct when he states that the "policy itself" does not state that SHU inmates will not be provided with the Seder food in their cells. (Morris Decl. Ex. A).  Exhibit A is entitled "Protocols for Passover 2012," and states that "[o]n the first two evenings, Passover is observed by a Seder service and meal. . . . *Attendance* at the Seders will be by call-out only." (*Id.*) (emphasis added).

---

[9] Plaintiff is not challenging the policy which prohibits SHU inmates from participating in congregate services.  The district court adopted my recommendation, dismissing any claim that plaintiff was not allowed to attend the Seder. (Dkt. No. 37 at 2). The issue is only whether his rights were violated when he was not provided with the appropriate food to celebrate the Seder in his SHU cell.

The protocol also states that "Nutritional Services has distributed the menu for Passover. With the exception of the Seder meals, the Passover menu will be served at regular meal times." (*Id.*) There is no discussion of inmates who are in disciplinary housing and no specific prohibition on affording inmates in SHU the appropriate food in their cells. This "prohibition" is an interpretation of the protocol, based upon the belief that the Seder may only be celebrated with a congregate service, and that only those inmates who could "attend" the Seder were entitled to the appropriate meal. The protocol was issued by Jeff McCoy, Deputy Commissioner for Program Services in Albany, New York (DOCCS Central Office), who is not a defendant in this action.

Personal involvement requires that the individual who is, or becomes aware of, the violation, have the ability to take action to correct the problem. *See Conklin v. City of Suffolk*, 859 F. Supp. 2d at 441-42 (personal involvement requires knowledge and the ability to take action). In this case, defendants CO Paterson and CO Forbes were only involved in serving plaintiff's Passover meal on April 6th. (Compl. ¶¶ 10-17). CO Demers and CO Kroeger were the officers who served the Passover meals on April 7th. (DT at 35-37). Plaintiff acknowledged this at his deposition. (DT at 16-17). Although these four defendants were obviously involved in failing to provide plaintiff with the food that he claims was necessary,[10] none of these corrections officers would have had the ability to change the policy or provide plaintiff with any food that was not given to them to serve.

_____

[10] In the complaint, plaintiff mentions that the Passover meal was also missing hot water, and that the hot water was never provided to him. (Compl. ¶¶ 15-17). It does not appear that the hot water was part of the Seder, nor did it appear that this issue was significant.

Plaintiff alleges that he spoke to Sergeant Debya when he "eventually made a gallery walk through," and defendant Debya told plaintiff to write to the mess hall to correct the issue." (Compl. ¶¶ 18-20). Defendant Debya allegedly refused to contact anyone who might be able to help, even after plaintiff explained that no letter would reach the appropriate individuals in time for the April 7th meal.[11] Defendant Debya told plaintiff that there was nothing he could do for plaintiff. (Compl. ¶ 22). On April 7th, plaintiff claims that he asked defendant Debya again about the Seder meal, and defendant Debya stated that no inmates in SHU were allowed to participate in the Seder because "inmates has [sic] to congregate." (Compl. ¶ 32). Plaintiff states that defendant Debya told plaintiff that the Superintendent ordered this policy, and defendant Debya told plaintiff to write a grievance about it.[12] (Compl. ¶ 33, 36). None of these officers, including Sergeant Debya, were involved in formulating the policy, or the interpretation of the protocol, that was responsible for plaintiff missing his two Seder meals. None of these officers would have been able to give plaintiff the food that he was requesting, either on April 6th or 7th of 2012. Thus, any claim for damages may be dismissed as against defendants Paterson, Forbes, Demers, Kroeger, and Sergeant Debya.

Defendant Haug is the Food Service Administrator. Plaintiff has named

---

[11] Plaintiff appears to have an issue with the April 7th Passover meal itself (rather than just with the extra food for the Seder). He states that he was missing both hot water and non-iodized salt. (Compl. ¶ 28). These defects appear to be minor issues, while the central issue in this case is the policy itself.

[12] Plaintiff also states that defendant Debya stated that "he was Christian and we have certain beliefs as well. But, unfortunately I can't do anything for you because if the Superintendent say [sic] you can't have it, then you can't have it." (Compl. ¶ 36).

defendant Haug because, after plaintiff filed a grievance about missing the two meals, defendant Haug responded to the grievance investigation. (Compl. ¶ 38). Plaintiff's Exhibit D is a page from the grievance response, dated May 1, 2012 which states "Per D. Haug FSA SHU inmates were not allowed the Seder meals." (Pl.'s Ex. D) (Dkt. No. 1-1 at 16). At the time that defendant Haug became aware of plaintiff's complaint, the 2012 Seder was over, and defendant Haug had nothing to do with depriving plaintiff of the required food. At that time, although defendant Haug explained the policy to the grievance committee,[13] defendant Haug had no ability to rectify the situation, and thus, as a supervisor, was not "personally involved" in the alleged constitutional deprivation. Thus, any remaining claim for damages may be dismissed as against defendant Haug.

Plaintiff has also sued Superintendent Rock. Even though defendant Debya presumed that the Superintendent had the ability to change the meal that was served to plaintiff, it does not appear that defendant Debya was correct, and the policy was created and implemented by the DOCCS Central Office in Albany. In addition, there is no indication that Superintendent Rock became aware of the issue at any time when he could have changed the situation even if he was authorized or wished to do so. At plaintiff's deposition, he testified that he spoke to defendant Rock about the issue on his next executive "walk through," which was apparently during Passover, but after the Seder meals had already been missed. Thus, defendant Rock was not "personally

---

[13] The term "per" does not necessarily indicate (as plaintiff believes), that defendant Haug had any responsibility for formulating the policy. It is now clear that he did not have any such responsibility. The language in the grievance response only indicates that he answered the investigator's question regarding the policy.

responsible" for any alleged constitutional violations. Any claim for damages may be dismissed as against defendant Rock.

The same is true for Rabbi Friedmann. It is unclear when he became aware that plaintiff complained about not getting the Seder meals on April 6th and 7th, but Cheryl Morris states in her declaration that Rabbi Friedmann did not take part in the decision to refuse plaintiff his Seder meal on those two dates, and that he was also not authorized to override the Central Office policy. (Morris Decl. ¶ 8). Thus, Rabbi Friedmann was not personally involved in any alleged constitutional violation.

### b.     Qualified Immunity

Even assuming that some or all of the defendants were personally involved in the alleged constitutional violation, they would be entitled to assert the defense of qualified immunity with respect to plaintiff's claim. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In evaluating whether a right was clearly established at the time a civil rights defendant acted, the court must determine: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and, (3) whether under pre-existing law a reasonable defendant official would have understood that his or her acts were unlawful." *African Trade & Information Center, Inc., v. Abromaitis*, 294 F.3d 355, 360 (2d Cir. 2002) (citations omitted). Even if the constitutional privileges are clearly

established, a government actor may still be shielded by qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991) (citing *Magnotti v. Kuntz*, 918 F.2d 364, 367 (2d Cir. 1990)).

In this case, in 2012, it was well settled that inmates retained religious rights under the First Amendment and under RLIUPA, and that prison inmates had a "clearly established right 'to a diet consistent with [their] religious scruples.'" *Holland*, 2014 WL 3360615, at *4. This right has been recognized "'as early as 1975.'" *Id.* (citing *McEachin v. McGuinnis*, 357 F.3d at 203 (citing *Kahane v. Carlson*, 527 F.2d 492, 495 (2d Cir. 1975) (kosher meals)). In 2004, the Second Circuit found that an inmate's free exercise rights would be substantially burdened when prison officials denied his request for a meal to celebrate the Eid ul-Fitr feast. *Ford*, 352 F.3d at 593-94.

In *Ford*, the court also determined that an individual's sincerely held belief was entitled to constitutional protection, notwithstanding disagreement over the belief among other members of that religion. 352 F.3d at 589. In *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984), the Second Circuit held that "[t]he freedom to exercise religious beliefs cannot be made contingent on the objective truth of such beliefs." In *Jackson v. Mann*, 196 F.3d 316, 321 (2d Cir. 1999), the court held that the question of whether Jackson's beliefs were entitled to Free Exercise protection turned only on whether those beliefs were "sincerely held," not on the "ecclesiastical question" of whether Jackson was, in fact, a Jew under Jewish law. In *Ford*, the court stated that "the opinion of DOCS religious authorities cannot trump the plaintiff's sincere belief."

352 F.3d at 590-91. The court found that "any perceived lack of objective validity to Ford's belief [that the Eid ul Fitr feast was critical to his observance as a Muslim] did not entitled defendants to summary judgment. *Id.* at 591.

In this case, defendants argue that the Seder must be celebrated in a congregate service, "by call-out" only.[14] Since plaintiff was in SHU, he could not *attend* the Seder, and therefore, could not get the Seder meal.[15] Plaintiff strenuously argues that he did not have to *attend* the service in order to obtain the appropriate food and celebrate the Seder in his cell. He also states that when he was at Fishkill, the officials allowed another inmate to have the Seder meal in his cell.[16] Based on *Ford* and *Jackson*, it was well-established that the fact that defendants, including the Rabbi, believed that the Seder could only be celebrated in a congregate service, did not affect plaintiff's claim that he sincerely believed that he could have celebrated the Seder in his own cell. Thus, plaintiff's right was well-established.

This does not end the inquiry into qualified immunity. The court must still examine whether it was "objectively reasonable" for the defendants to believe that their acts did not violate plaintiff's rights. With respect to the individuals who served

---

[14] As stated above, the 2012 Protocol did not even mention SHU. The prison officials have interpreted the protocol as preventing plaintiff from obtaining Seder meals in his cell. The protocol only states that participation in the Seder was by "call out" only.

[15] While the Second Circuit has determined that *keeplock* status does not automatically deprive inmates of the opportunity to attend congregate services, it has been determined that inmates in SHU do not have that right. *Compare Salahuddin*, 993 F.2d at 308 (keeplock), with *Smith v. Artus*, 2010 WL 3910086 at *20-21 (SHU status at Upstate a disciplinary facility).

[16] This apparently occurred before plaintiff changed his religious affiliation to Jewish.

plaintiff his Passover meals on April 6th and 7th, (even assuming that they were "personally involved"), there was no way that they could have known they were violating plaintiff's religious rights. They were only allowed to deliver the food that they were given to deliver, and plaintiff was getting a meal that was kosher for Passover, notwithstanding that it was lacking a portion of the meal that plaintiff believed was critical.

The supervisory officials were basing their actions on their interpretation of the protocol, issued by the Central Office. As stated by Cheryl Morris, these individuals did not have the authority to change the protocol. The court would also point out that plaintiff includes the letters that he wrote to defendants Haug, Rabbi Friedmann, and Superintendent Rock prior to Passover. (Dkt. No. 1-1 at 1-3; Pl.'s Ex. A). Each letter states that plaintiff would like to "participate" in the Seder. Plaintiff **never** mentioned that he wished to have the meal in his cell. The letter to defendant Haug states: "I would like to observe and participate in the Ceder [sic] meal." (Pl.'s Ex. A at 1). The letter to Rabbi Friedmann states that "Passover begins in a little over a week and I would like to participate in Ceder during this Passover." (*Id.* at 2). The letter to Superintendent Rock states that "Passover is in approximately 1 week. As the Rabbi have [sic] been notified, Im [sic] also notifying your office to participate in the Ceder for Passover." (*Id.* at 3).

It would certainly have been reasonable for each of these individuals to believe that plaintiff was requesting that he be allowed to *attend* the meal, because to these defendants, "participation" in the Seder meant attendance. While plaintiff's belief that

he could participate in the Seder by having the food brought to his cell may certainly have been "religious" in his view and entitled to protection, the defendants who had a different view, would not have understood that the failure to provide the Seder meal in plaintiff's cell was inconsistent with his religious beliefs, particularly based on the letters that he wrote and his failure to specifically request this accommodation. As stated above, there was no constitutional violation in refusing plaintiff's *attendance* at the Seder. Plaintiff does not argue otherwise. It would have been reasonable for each of these defendants, including Rabbi Friedmann, to refuse such a request or even to ignore such a request. Until plaintiff spoke to the officers who served his meal on April 6th and 7th, there was no indication that plaintiff may have been requesting that he be allowed to participate by having the appropriate food brought to his cell. By then, the defendants were not in a position to remedy the situation.

Thus, although plaintiff may have had a well-established right to have the Seder meal brought to his cell, based on his individual belief that he could celebrate the Seder by himself, it was objectively reasonable for all the defendants to believe that they were not violating plaintiff's rights, based on his letters and based on their reasonable interpretation of the 2012 protocol from DOCCS Central Office. Thus, any remaining claim for damages may be dismissed as against all the defendants.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 64) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 6, 2014

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**